**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**LISA LANDRY,**

       **Plaintiff,**

**-vs-**                     **Case No. 8:13-cv-2132-T-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

## I.   BACKGROUND

### A.   Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on March 5, 2010 alleging and an onset of disability on January 1, 2008, due to anxiety attacks, high blood pressure, GERD, irregular heart beat, arthritis, and a plate and screws in the left foot. R. 12, 111-14, 128, 220-21. Her application was denied initially and upon reconsideration. R.56-57. Plaintiff requested a hearing, which was held on January 9, 2012, before Administrative Law Judge Dores D. McDonnell, Sr. (hereinafter referred to as "ALJ"). R. 31-55. In a decision dated January 26, 2012, the ALJ found

Plaintiff not disabled as defined under the Act through the date of his decision. R. 9-23. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on June 14, 2013. R. 1-5. Plaintiff filed this action for judicial review on August 16, 2013. Doc. 1.

### B.    Medical History and Findings Summary

Plaintiff was born on September 17, 1972 and was 40 years old at the time fo the ALJ's decision. R. 21, 124. Plaintiff had a high school education and past work as a fast food worker, a certified nursing assistant and a consignment store worker. R. 21, 129.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of anxiety attacks, high blood pressure, irregular heartbeat, arthritis, and a plate and seven screws in her left foot. R. 128. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from a lower limb fracture status post open reduction internal fixation; right perineal nerve injury with foot drop and fascia disorder; osteoarthritis of the lower back; hypertension; and chronic obstructive pulmonary disease ("COPD"), which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 14.

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to lift twenty pounds occasionally and ten pounds frequently; with the ability to stand or walk 3 hours in an 8 hour workday; with the ability to sit about 6 hours in an 8 hour workday. R. 17. Additionally, she was limited to no more than occasional pushing or pulling in the lower extremities or climbing ramps or stairs, balancing, stooping, and kneeling; never climbing ladders, ropes, or scaffolds, crouching, or crawling; no concentrated exposure to extreme cold or vibrations; and less than even moderate exposure to hazards such as unprotected heights and hazardous machinery. R. 17. The ALJ also found Plaintiff could hear, understand, remember, and carry out simple routine and

complex work instructions, and could interact appropriately with co-workers, supervisors, and the general public. R. 17. Based upon Plaintiff's RFC, the ALJ determined that she could not perform past relevant work. R. 21.

Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a small products assembler, ply-packer/heat sealer, and production inspector. R. 22. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 23.

Plaintiff now asserts two point of error. She argues that the ALJ erred by finding she was capable of performing "sedentary" work and when the hypothetical to the VE produced only occupations at the "light" level of exertion. Second, Plaintiff contends that the ALJ erred by not including in the hypothetical the use of a cane. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

### A.   RFC and the hypothetical to the VE

Plaintiff argues that the ALJ's decision is erroneous and internally inconsistent in that he opined Plaintiff had the RFC to perform a wide range of "sedentary" work (R. 17), when the jobs the VE identified were classified in the Dictionary of Occupational Titles (DOT) as light work. R.

22. The Commissioner argues that the ALJ's identification of Plaintiff's RFC as "sedentary" was a mere typographical error that does not warrant remand because the actual RFC the ALJ assigned would allow Plaintiff to perform some light work.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d).

The Plaintiff is correct that case law in this circuit requires that the ALJ must employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

Plaintiff sustained a complex comminuted closed fracture of the left calceaneous after a low impact slip and fall in 2007. R. 352. Surgery on her ankle restored stability but she complained of severe continuous sharp shooting pain, 8/10 in severity in that heel. R. 352. The pain was worsened by prolonged standing and walking, mitigated by rest. R. 352.

In July and October 2008 and July 2009, treating orthopaedic surgeon Michael P. Clare, M.D., noted Plaintiff ambulated with a minimally antalgic gait in regular shoes. R. 237, 239-41. Plaintiff went for about one year, from mid-2009 to May 2010 without follow up. R. 352. She

discontinued using the ankle brace because it aggravated her pain and swelling. R. 352. At the consultative exam on May 24, 2010, Dr. Blum noted Plaintiff's abnormal but stable gait – ataxic so as to avoid weight bearing on the left heel with a "slap" of the right foot due to foot drop – and recommended a right ankle splint and cane to benefit stability. R. 354.

In April 2010, ER physician Anish Zachariah, M.D., opined that, despite tingling in Plaintiff's right leg and foot below her knee, she had a normal gait and was able to ambulate without difficulty[1]. R. 324, 328, 330. In August 2010, Dr. Clare provided Plaintiff with a compression sock and cane to help with the pain caused by a prominent screw head on the metal plate attached to her left heel bone. R. 18, 445. In November 2010, Dr. Clare removed the prominent screw from Plaintiff's left heel plate. R. 18, 515. In December 2010 and May 2011, he subsequently noted that she ambulated with only a minimally antalgic gait, she exhibited 75% normal hind foot motion, and diagnostic studies showed her left heel joint remained aligned and intact. R. 18, 514, 552. Dr. Clare also commented that removal of the remainder of her plate and screws may further relieve her symptoms; she could participate in her activities as tolerated. R. 20, 514, 552. In October 2011, treating physician Carolina Samper-Pena, M.D., examined Plaintiff as a new patient and noted that she had a normal gait, normal extremities, and no weakness. R. 19, 547.

Plaintiff argues that the ALJ erred in inconsistently finding Plaintiff capable of a wide range of "sedentary" work, and then relying on the VE's hypothetical responses that included work at the light level. Doc. 20 at 7. Sedentary work is defined in the Regulations as involving

> [L]ifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

---

[1] In June 2010, examining psychologist John Dsurney, Ph.D., noted that Plaintiff's gait was unremarkable and she ambulated without assistance. R. 19, 364. Obviously, the psychologist is not a specialist in the are of treating ankle injuries.

20 CFR § 404.1567(a). In comparison, the Regulations define light work as:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR § 404.1567(b).

Plaintiff argues that since the ALJ found Plaintiff's RFC was constrained to sedentary level work, then reliance on the VE's testimony about jobs at the "light" level of exertion, without careful and explicit explanation from the ALJ, was erroneous and more than just harmless error. She contends that lifting twenty pounds from a seated position does not make sense, ergonomically or by definition. Even though the VE asserted that 90% of these jobs would allow for a full sit/stand option, lifting 20 pounds up to one-third of the day from a seated position is "highly suspect."

The Commissioner argues that, because Plaintiff could lift the amount of weight necessary for light work, as well as operate arm and, to some extent, leg controls, she was still able to perform *some* light work even though she had to sit most of the day. Doc. 21 at 9 (citing 20 C.F.R. § 416.967(b); SSR 83-10). The Commissioner also contends that the VE was fully aware of the Plaintiff's limitations when she testified Plaintiff could perform the jobs identified, thus, Plaintiff failed to meet her burden of proving that she could not perform the jobs identified by the VE and the ALJ.

The ALJ in this case asked the VE to assume an individual with Plaintiff's age, education, and work experience, and who could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 3 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, occasionally push and/or pull foot controls; postural limitations of occasionally climb stairs and

ramps; avoidance of ladders, ropes, or scaffolds; occasionally bending, stooping, and kneeling; avoidance of crouching and crawling; and no manipulative, no visual, no communicative, no environmental limitations except for the avoidance of extreme cold, extreme exposure to vibration, the avoidance of unprotected heights and hazardous machinery. R. 49-50. The VE testified that such an individual could not perform Plaintiff's past relevant work. R. 50. The VE then testified that the hypothetical individual could perform other work in the national economy, including work as a small products assembler, poly-packer/heat sealer, and production inspector. R. 22, 50. The ALJ relied on the VE's testimony, together with the framework of the Medical-Vocational Guidelines, to find that Plaintiff could perform other work and was not disabled. R. 22-23.

Here, rather than relying solely on the categorical terms "light" and "sedentary" to describe the limitations in the hypothetical, the ALJ specifically set forth those exertional limitations as to the amount of weight the hypothetical individual was able to lift/carry and amount of sit/stand/walking as well as postural, environmental limitations, as set forth above (on R. 49-50). As the Commissioner points out, none of the jobs identified by the VE requires functional capacities greater than those set forth by the ALJ in the RFC assessment and hypothetical to the VE. *United States Dep't of Labor, DOT* (4th ed. 1991) § 739.687-030, 1991 WL 680180 (small products assembler), § 920.686-038, 1991 WL 687959 (poly-packer/heat sealer), § 727.687-054, 1991 WL 679672 (production inspector). The ALJ was specific in the hypothetical to the VE and did not even use the term "sedentary" to describe the exertional level of the hypothetical individual. *See* R. 49. The VE's response was based on the specific limitations actually included in the hypothetical. "A hypothetical question posed to the VE should include specific job-related restrictions, rather than broad limitations or categorical terms. While the ALJ is not required provide a verbatim recitation of the medical findings, the hypothetical question must adequately reflect those limitations." *Keels v. Astrue*, 2008 WL 2433200, *9 (E.D. Mich. June 12, 2008); *see also Kozlowski v. Commissioner*

*of Social Security,* 2012 WL 3472354 (E.D. Mich. March 14, 2012) (affirming ALJ decision where the hypotheticals to the VE contained specific limitations, including a sit/stand option).

The ALJ's reference to "sedentary" work in Plaintiff's RFC – in spite of finding Plaintiff capable of the exertional limitations of "light work" – was harmless error under the facts of this case. *Keels*, 2008 WL 2433200 at *9-10 (finding harmless error where, even if only the ALJ's second, more restricted, hypothetical was accurate, the ALJ had referenced those jobs and "[t]here would be no merit in remanding the ALJ's decision simply because he stated that relevant jobs were "light" when in fact he meant to say that they were "sedentary"). In this case, the ALJ posed a hypothetical to the VE that accurately reflected Plaintiff's exertional limitations, and Plaintiff does not challenge these exertional limitations (except as discussed below with regard to use of a cane). The fact that the ALJ erroneously described Plaintiff as capable of "sedentary" work for limitations that fall in the category of "light" work was harmless error, and the case will not be remanded.

**B. Omission of a cane in the hypothetical to the VE**

Plaintiff contends that the ALJ erred in failing to include the opinion of the consultative examiner, Dr. Blum, that Plaintiff needed a cane in the hypothetical to the VE. The Commissioner argues that Plaintiff mischaracterizes Dr. Blum's opinion in that he did not opine Plaintiff needed a cane to function, but merely stated that Plaintiff's stability would "benefit" from a right ankle splint and a cane thus, ALJ was under no duty to necessarily find that Plaintiff required a cane. R. 18, 354.

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or

laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of nonexamining physicians, treating physicians' opinions are given more weight than non-treating physicians. *McNamee v. Soc. Sec. Admin.*, 162 F. App'x 919, 923 (11th Cir. Jan. 31, 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2),(5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(f), 416.927(f). "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citation omitted); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Plaintiff argues that the ALJ erred in omitting from her RFC and the hypothetical to the VE the opinion of the consultative examiner, Dr. Blum (R. 354) who opined that Plaintiff would benefit from the use of a cane for stability; the ALJ also failed to address the impact of a cane upon the ability of the Plaintiff to lift 20 pounds occasionally or to perform the jobs cited. Plaintiff contends that no medical expert opinion contradicted Dr. Blum's opinion, except the observations of Dr. Dsurney, who is a psychologist (R. 363) rather than a medical doctor. R. 17-18.

The Commissioner argues that the ALJ properly considered Dr. Blum's May 2010 opinion (R. 18, 352) and noted that Plaintiff was assessed with few restrictions other than Dr. Blum's

-10-

recommendation that a right ankle splint and cane would help her stability. R. 20, 354. The Commissioner points to the ALJ's notation of Dr. Blum's notes that, despite Plaintiff's abnormally ataxic gait, her gait was stable, her transitional movements were normal, her left ankle mortise was well-aligned, and her left subtalar joint was unremarkable. R. 19, 354.

The ALJ also relied on the November 4, 2010 opinion of state agency physician, Dr. Wunsch to find Plaintiff could walk and/or stand for a total of three hours in an eight-hour workday. R. 20, 506-13. Dr. Wunsch noted that Plaintiff complained of pain but had had no orthopedic follow up in the year prior to 2010. R. 507.

Following Dr. Blum's consultative exam on May 24, 2010, in August 2010, Dr. Clare also provided Plaintiff with cane and compression sock to help with the pain caused by a prominent screw head on the metal plate attached to her left heel bone. R. 18, 445. He commented at that time that removal of the remainder of her plate and screws may further relieve her symptoms; she could participate in her activities as tolerated. R. 20, 514, 552. By November 2010, when Plaintiff's pain had not improved, Dr. Clare removed the prominent screw from Plaintiff's left heel plate. R. 18, 515. In December 2010 and May 2011, he subsequently noted that she ambulated with only a minimally antalgic gait, she exhibited 75% normal hind foot motion, and diagnostic studies showed her left heel joint remained aligned and intact. R. 18, 514, 552. In October 2011, treating physician Carolina Samper-Pena, M.D., examined Plaintiff as a new patient and noted that she had a normal gait, normal extremities, and no weakness. R. 19, 547. In his decision, the ALJ noted:

> While the fact that the claimant underwent surgery would normally weigh in the claimant's favor, it is offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms. In fact, the claimant testified that the surgery was successful for up to two years after the procedure was performed until a screw became loose, thereby causing left foot pain. Since then the claimant has consistently reported experiencing left foot pain. In addition, she has occasionally exhibited difficulty with gait. However, Dr. Clare observed that the claimant had only a minimally antalgic gait. Dr. Blum observed that the claimant had a stable gait, although it was abnormally ataxic. . . . Accordingly, the record essentially supports that the claimant occasionally exhibited some mild restrictions in walking. . . In

-11-

>October 2011, the claimant exhibited a normal gait and had no extremity weakness. Notably, the claimant testified the right foot drop resolved with only some tingling and cramping occasionally occurring.

R. 19. Accordingly, substantial evidence supports the ALJ's omission of the cane in the hypothetical to the VE.

## IV.  CONCLUSION

The record in this case shows that Plaintiff sustained a serious injury and received surgery as a result; however, her condition improved with surgery and long-term care of the condition. The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on August 11, 2014.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record